UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FLOYD L. SEMONS,

      Plaintiff,

v.              Case No. 22-CV-594

JAMES TAULBUT,

      Defendant.

## DECISION AND ORDER

  Plaintiff Floyd L. Semons, who is representing himself and confined at Green Bay Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. Semons was allowed to proceed on a claim under the Eighth Amendment regarding the conditions of his confinement wherein he alleges that the defendant, James Taulbut, did not move him from a cell with crumbling plaster. The parties filed cross-motions for summary judgment. (ECF Nos. 51, 62.) They parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 10, 18.)

## PRELIMINARY MATTERS

  Taulbut argues that Semons failed to follow Federal Rule Civil Procedure 56 and Civil Local Rule 56 when responding to his motion for summary judgment by not providing proper evidence in support of his response materials. (ECF No. 85 at 2-3.) District courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in a light most favorable

to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). While Semons's response materials do not formally conform with the rules, his response contains sufficient facts, allowing the court to rule on Taulbut's summary judgment motion. The court notes that Semons submitted declarations both in support of his motion for summary judgment and in his response to Taulbut's summary judgment motion. Semons also invokes 28 U.S.C. § 1746 in his complaint, which is enough to convert the complaint into an affidavit for purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011). As such, the court will consider the information contained in Semons's submissions where appropriate in deciding the cross-motions for summary judgment.

**FACTS**

*The Condition of Cell 8*

At all times relevant Semons was incarcerated at Dodge Correctional Institution, where Taulbut was employed as a correctional officer. (ECF No. 64, ¶¶ 1-2.) On March 28, 2022, Dodge's Movement Office, which decides housing assignments, assigned Semons to the top bunk in Cell 8 in Unit 10. (*Id.*, ¶¶ 8-10.) When Semons arrived at Cell 8 he informed Taulbut of "plaster damage on the east wall above the bunkbeds" which "consisted of a divot that was about 1.5 wide in diameter" and was a "few inches deep in the center." (*Id.*, ¶¶ 11-14.) The divot was on the wall and not the ceiling. (*Id.*, ¶ 15.) Taulbut noted that the wall "looked powdery, with small granules that might fall, but only to the touch. There were no loose pieces of plaster." (*Id.*, ¶ 16.)

Taulbut told Semons that a work order had already been placed for the plaster damage. (*Id.*, ¶ 18.)

Semons asserts that he requested to be moved from Cell 8 that day and made additional requests for several days thereafter. (ECF No. 80 at 4.) Semons states Taulbut denied his requests, but Taulbut states that he was not authorized to make such decisions. (*Id.*; ECF No. 64, ¶ 37.) Although Semons disputes this, alleging that Taulbut allowed another inmate to be moved on March 26, 2022, because of the plaster issue, he does not provide any evidence in support. (ECF No. 80 at 4.) Taulbut asserts that, even though Semons repeatedly requested to be moved from the cell, he still chose to sleep near the plaster damage. (ECF No. 64, ¶ 43.) Taulbut notes that it was not against the rules for Semons to sleep on the other end of the bed, away from the plaster damage, but Semons chose not to. (*Id.*, ¶¶ 45-46.)

On March 30, 2022, Semons stopped Taulbut while he was doing rounds and told him that plaster debris had fallen into his eye. (ECF No. 64, ¶ 19.) Taulbut called the Health Services Unit (HSU) to arrange care for Semons and also gave Semons an opportunity to use the shower to wash out his eye. (*Id.*, ¶ 21.) It is unclear from the record whether Semons took Taulbut up on his offer. Taulbut also informed his supervisors of the incident, drafted an incident report, and sometime later "put cardboard up between the top bunk and the wall to cover the affected area . . . so that any crumbling plaster would roll off behind the cardboard." (*Id.*, ¶¶ 22-24.)

Semons asserts that Taulbut was aware of the condition of Cell 8 in December 2021 when he placed the first work order. (ECF No. 53, ¶ 6.) Semons also asserts that

3

Taulbut moved another inmate out of Cell 8 at that time because that inmate got plaster in his eye. (*Id.*, ¶ 7.) However, Semons provides no evidence of this.[1]

Taulbut does not dispute that he first put in a work order for the plaster issue in December 2021. (ECF No. 64, ¶ 26.) He also notes that several other cells on Unit 10 had plaster issues, and he put in a work order for those at the same time. (*Id.*, ¶ 30.) Dodge's maintenance team, not Taulbut, decides the priority of the work orders. (*Id.*, ¶ 31.) Once Taulbut submits a work order, he is not required to follow-up on the status of the work order, and instead is able and expected to rely on the maintenance team to decide when to perform the work. (*Id.*, ¶¶ 33-34.) After Semons got plaster in his eye, Taulbut placed a second work order. (ECF No. 64, ¶ 25.) It is unclear from the record whether the plaster was ultimately repaired.

*Semons's Medical Care*

On March 30, 2022, Semons was examined by an unidentified nurse in the HSU, who flushed out his eye. (ECF No. 64, ¶¶ 52-53.) The next day, March 31, 2022, Semons was examined by non-defendant Dr. Schneider-Donley (whose first name is not available in the record). (*Id.*, ¶ 54.) At that appointment Semons stated his eye was still irritated and that he was experiencing yellow discharge. (*Id.*, ¶ 55.) Dr.

---

[1] Throughout the case, and in both his materials supporting his motion for summary judgment and in his response to Taulbut's motion, Semons has made much of the fact that Taulbut would not provide him information related to the December 2021 work order and the circumstances around the inmate's removal from Cell 8 at that time. (*See* ECF Nos. 39, 44, 82, 100, 104, 107, 109.) However, though Semons filed several motions to compel this information (and, when those failed, motions for sanctions), at no time did he meet and confer with Taulbut to resolve the discovery issues. As such, the court denied his motions to compel and his motions for sanctions. Semons is a seasoned litigator with several cases before the court. If he could not provide this evidence, it is because he failed to follow the appropriate procedural rules.

Schneider-Donley noted that yellow discharge with an irritated eye is common, and during her examination "note[d] a nasal corneal abrasion in Semons's left eye" that was 2mm x 2mm in size. (*Id.*, ¶¶ 57-58.) This is a small, superficial abrasion that commonly occurs and can be caused by something as simple as rubbing one's eye. (*Id.*, ¶¶ 59-61.) Dr. Schneider-Donley instructed Semons not to rub his eye and prescribed him antibiotic eye drops to use four times a day for seven days. (*Id.*, ¶¶ 63-65.) Semons was also scheduled for a follow-up appointment in three days. (*Id.*, ¶ 66.)

On April 4, 2022, non-defendant Dr. James Richter examined Semons at his follow-up appointment. (ECF No. 64, ¶ 68.) Dr. Richter observed that Semons's cornea was clear and the abrasion was fully healed. (*Id.*, ¶¶ 69-70.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

5

(1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Semons claims that Taulbut violated his Eighth Amendment rights by knowingly housing him and keeping him in a cell that contained a dangerous condition. The Eighth Amendment "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain.'" *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). These conditions can include cell conditions. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). "A § 1983 claim based upon a violation of the Eighth Amendment has both an objective and subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk

to the prisoner's health and safety." *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006).

When the court screened Semons's complaint it noted that the complaint did not describe the extent of the plaster damage and explained that later in the case he would have to demonstrate that the plaster damage amounted to a dangerous condition. Even taking the facts in the light most favorable to Semons, he does not demonstrate that the plaster damage in his cell posed a serious and substantial risk to his health and safety. "An 'objectively sufficiently serious' risk is one that society considers so grave that to expose *any* unwilling individual to it would offend contemporary standards of decency." *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (emphasis in original)). The Court of Appeals for the Seventh Circuit has repeatedly held that minor maintenance hazards like a protrusive lip on a recreational field and slippery prison floors do not amount to an excessive risk sufficient enough to state a constitutional claim. *See id.*; *Murphy v. Walker*, 51 F.3d 714, 721 (7th Cir. 1995). In *Granville v. Dart*, Case No. 09-C-2070, 2011 WL 892751 at *6 (N.D. Ill. Mar. 11, 2011), the court determined that the conditions of the prisoner plaintiff's cell, which included dripping water, exposed mesh wire, crumbling plaster and chipping paint" did not amount to a constitutional violation.

Semons has not presented evidence that large chunks of plaster were falling off the wall in such a way that could potentially cause serious injuries, nor does he demonstrate that he was ever at risk of a serious injury. While he does assert he

7

suffered a serious eye injury, the injury was a superficial scratch that healed within three days. It is also undisputed that Semons did not take precautions to protect himself from the plaster damage, such as sleeping on the other side of the bed. This suggests that Semons did not think the plaster was a serious risk.

Semons spends most of his time arguing that Taulbut put him in a cell knowing that there was plaster damage and that other inmates had previously suffered injuries in that cell from falling plaster. While Taulbut disputes this, these disputes are immaterial because, even accepting Semons's version of events, he still fails to establish that the risk posed by the plaster was objectively and sufficiently serious. He does not present evidence that others had sustained objectively serious injuries as a result of the plaster damage. Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). "It is therefore incumbent on the party opposing a summary judgment motion to 'inform the district court of the reasons why summary judgment should not be entered'" *Reed v. Brex, Inc.*, 8 F. 4th. 569, 578 (7th Cir. 2021) (quoting *Riely v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018)).

Even if Semons demonstrated that the plaster presented an objectively serious risk to his health and safety, no reasonable factfinder could conclude that Taulbut was deliberately indifferent to it. According to his job duties, Taulbut did not have the authority to move Semons to another cell. Although Semons asserts that Taulbut

8

should have moved him to a new cell because he did so for another prisoner, he presents no evidence of this.

And other than having the ability to submit a work order, Taulbut did not have the authority to direct the maintenance team to fix the problem. Section 1983 makes public employees liable "for their own misdeeds but not for anyone else's" *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir.2009). Prisons "divide tasks; no prisoner is entitled to insist that one employee do another's job." *Id*. at 595. Once Taulbut put in a work order, he was entitled to defer to the discretion of the maintenance team to prioritize when the work would be done. <u>While</u> Semons asserts that Taulbut should have followed up on his December 2021 work order with another work order, Taulbut had no obligation to do so. In any event, after Semons told him that he got plaster in his eye, Taulbut did place a second work order.

As such, the court denies Semons's motion for summary judgment and grants Taulbut's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, Taulbut's motion for summary judgment is granted. Taulbut also argued that he was entitled to qualified immunity, but because the court granted summary judgment in his favor on the merits, it does not need to address the qualified immunity arguments. Because there are no remaining claims, the case is dismissed.

# ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Taulbut's motion for summary judgment (ECF No. 62) is **GRANTED.**

**IT IS FURTHER ORDERED** that Semons's motion for summary judgment (ECF No. 51) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 11th day of September, 2023.

BY THE COURT

_William E. Duffin_
WILLIAM E. DUFFIN
United States Magistrate Judge